UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RENAE JOY SWAIM *ex rel.* CLINTON LEE SWAIM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF NEVADA *ex rel.* NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF PUBLIC AND BEHAVIORAL HEALTH, *et al.*,<br><br>Defendants. | Case No. 3:21-cv-00502-ART-CSD<br><br>ORDER |

Plaintiff Renae Joy Swaim ("Ms. Swaim") brings this action as Special Administrator of the Estate of Clinton Lee Swaim ("Mr. Swaim"), her husband; as parent and custodian of Clinton Thomas Swaim, Jr., and minor K.R.S.; and individually, for the death of Mr. Swaim by suicide while he was committed to the custody of Lake's Crossing Center ("Lake's Crossing"), a psychiatric facility operated by the Nevada Department of Health and Human Services, Division of Public and Behavioral Health ("DPBH"). Before the court are: (1) the State of Nevada *ex rel.* DPBH's motion to dismiss the State of Nevada *ex rel.* DPBH for lack of subject matter jurisdiction by virtue of Eleventh Amendment immunity (ECF No. 6); and (2) individual defendants Brandon Taylor, John West, Rick Meier, Luiz Orozco, Nicholas Patiga, Vivian Davis, Samantha Lyons, Tanner Trout, and Erick McBride's motion to dismiss for failure to state a claim (ECF No. 16), to which the remaining individual defendants Lacey Patiga, Joel Gomez, David Atherton, Matt Bowman, Daiki Branch, James Cameron, Isaac Flores, Chris Henry, and Brad Mitchell have joined (ECF No. 30). For the reasons set forth in this order, the Court grants the State of Nevada *ex rel.* DPBH's motion to dismiss and grants in part and denies in part the individual defendants' motion to dismiss.

## I. BACKGROUND

Ms. Swaim filed her complaint in this Court on December 7, 2021. (ECF No. 1 ("Complaint").) According to Ms. Swaim's complaint, Mr. Swaim was a retired Washoe County Sheriff's Deputy and suffered in his life from bipolar disorder and depression. (*Id.* at ¶¶ 30–31.) On October 2, 2019, Mr. Swaim suffered an acute episode wherein he left his home and was observed wandering in a retail parking lot in Sparks, Nevada without a shirt or shoes. (*Id.* at ¶¶ 32–33.) The Sparks Police Department arrived and determined that Mr. Swaim should be detained for lack of ability to care for himself. (*Id.* at ¶¶ 34–35.) Mr. Swaim had no prior criminal convictions. (*Id.* at ¶ 39.)

Mr. Swaim was transported to Renown Regional Medical Center and placed in a hospital room. (*Id.* at ¶¶ 35–36.) Mr. Swaim began to shake and indicated that he was cold as a medical technician checked Mr. Swaim's vital signs. (*Id.* at ¶ 36.) During this initial evaluation, Mr. Swaim suddenly attacked the medical technician by jumping up and squeezing the medical technician's neck with his arm. (*Id.* at ¶ 37.) Sparks Police Department officers in the room tased and subdued Mr. Swaim and Mr. Swaim was charged with one count of Battery on a Protected Person by Strangulation, a Category B felony. (*Id.* at ¶¶ 38–39.) Pursuant to an order from the Justice Court of Reno Township, Mr. Swaim submitted to a competency evaluation at Lake's Crossing, a psychiatric facility operated by DPBH. (*Id.* at ¶¶ 4, 40.) He was deemed not competent to proceed and ordered committed to Lake's Crossing, where he appeared on November 14, 2019. (*Id.* at ¶¶ 41–42.)

At Lake's Crossing, Mr. Swaim was put on suicide watch. He was initially designated for "constant" watch due to suicide risk, and then sometime thereafter was reclassified for "Q15 Special" watch, which, according to Lake's Crossing policy, required consistent visual observation of "clients," including that all head counts and special watches include visual contact with the client which may

require pulling back bed covers and using lights to ascertain the client's physical condition. (*Id.* at ¶¶ 43–44.) Lake's Crossing policy also required that any client on suicide watch not be allowed any items in their rooms without written approval. (*Id.* at ¶ 45.)

According to Plaintiff's complaint, on December 8 and 9, 2019, Mr. Swain's demeanor changed noticeably. (*Id.* at ¶ 48.) On the night of December 9, Mr. Swaim committed suicide using his own bedsheet. (*Id.* at ¶ 47.) Mr. Swaim was found at approximately 8:26 on the morning of December 10, 2019. (*Id.* at ¶ 51.) A report of an investigation undertaken by the Department of Public Safety describes several significant policy violations by Lake's Crossing staff, including that Mr. Swain had gained access to extra bed linens, that it would have been virtually impossible to see inside Mr. Swaim's room when staff members checked the rooms via "quick walk-by's," and that no staff member entered Mr. Swaim's room to assure visual recognition of Mr. Swaim's condition at any time on the night of December 9, 2019, according to video surveillance footage. (*Id.* at ¶ 52.) Furthermore, another Lake's Crossing client heard noises coming from Mr. Swain's room and attempted to alert a staff member, Gomez, who reportedly took no action. (*Id.*)

Ms. Swaim named the State of Nevada *ex rel.* Division of Public and Behavioral Health of the Department of Health and Human Services as a defendant alongside eighteen individual staff members of Lake's Crossing and ten Doe defendants. The individual staff member defendants, sued in their individual capacities, are David Atherton, Matt Bowman, Daiki "Sam" Branch, James Cameron, Vivian Davis, Isaac Flores, Joel Gomez, Chris Henry, Samantha Lyons, Erick McBride, Rick Meier, Brad Mitchell, Luis Orozco, Lacey Patiga, Nicholas Patiga, Brandon Taylor, Tanner Trout, and John West. Ms. Swaim brings four claims: (1) deliberate indifference to a serious medical need against all defendants; (2) wrongful death against all defendants; (3) negligence against all

defendants; and (4) negligent hiring, training, selection, and supervision against the State of Nevada *ex rel.* DPBH.

## II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The State of Nevada *ex rel.* DPBH argues that it should be dismissed from this case because an action in federal court for money damages against a state or a state agency is barred by the Eleventh Amendment. (ECF No. 6 at 3.) The State of Nevada *ex rel.* DPBH argues that because Ms. Swaim seeks money damages from the State of Nevada arising out of the suicide of Mr. Swaim, the action against State of Nevada *ex rel.* DPBH falls squarely within the barrier set forth by the Eleventh Amendment. The State of Nevada *ex rel.* DPBH notes that Congress did not abrogate this immunity by enacting 42 U.S.C. § 1983 nor does Nevada waive this immunity. (*Id.* (citing NRS 41.031(3) ("The State of Nevada does not waive its immunity from suit conferred by Amendment XI of the Constitution of the United States.").)

A state agency is generally protected from suit in federal court by the Eleventh Amendment. *Howlett v. Rose*, 496 U.S. 356, 365, (1990) *See also Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (explaining that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief). States and state agencies are not "persons" for the purposes of § 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Cornel v. Hawaii,* 37 F.4th 527, 531 (9th Cir. 2022) (stating that States or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes are not "persons" under § 1983). Therefore, the State of Nevada and DPBH are protected by Eleventh Amendment immunity and cannot be sued under § 1983, which does not abrogate this immunity, nor is a cause of action available under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). *See*

4

*Krainski v. Nevada ex re. Bd. Of Regents of Nevada System of Higher Educ.*, 616 F3.d 963, 967 (9th Cir. 2010) (acknowledging, based on *Will*, 491 U.S. at 70–71, that the Supreme Court has expressly declined to extend *Monell*'s theory of municipal liability under § 1983 to state entities).

Regarding the state tort claims, Plaintiffs' argument that Nevada has constructively waived its Eleventh Amendment immunity by enacting an indemnification statute is unavailing. The Supreme Court has explained its reluctance to imply such a waiver, stating, "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where the state "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987) (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)); *see also PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2262 (2021) (requiring "unequivocal textual evidence" that a state has waived its Eleventh Amendment immunity). Plaintiffs argue that Nevada's indemnification statute, contained in Chapter 41 of the Nevada Revised Statutes, implicitly waives Eleventh Amendment immunity because those provisions compel the state to defend and indemnify its present and former employees in any civil action relating to the person's public duties or employment. (ECF No. 7 at 8.) Plaintiffs reasoning is contradicted by NRS 41.031(3), also in Chapter 41, which expressly provides that the state does not waive its Eleventh Amendment immunity. *See also Riggle v. State of Cal.*, 577 F.2d 579, 585 (9th Cir. 1978) (holding that California's Tort Claims Act did not waive the state's immunity in federal court even though the state could be sued in its own courts). This textual evidence points in favor the State's Eleventh Amendment immunity, not against it.

Finally, Ms. Swaim also argues that the State of Nevada *ex rel.* DPBH should be retained in this action by virtue of Nevada's mandatory joinder statute,

1  NRS 41.0337, which requires that the State or appropriate political subdivision
2  be named as a party to any tort action arising out of an act or omission within a
3  public employee's duties. Ms. Swaim argues that the state tort claims are "so
4  related to claims in this action within the Court's original jurisdiction that they
5  form part of the same case or controversy and also form the basis for this Court's
6  supplemental jurisdiction[.]" In other words, Ms. Swaim argues that since
7  supplemental jurisdiction over the state tort claims is proper, the State of Nevada
8  *ex rel.* DPBH must be retained notwithstanding NRS 41.0337.

9  In *Craig v. Donnelly*, 439 P.3d 413 (Nev. App. 2019), the Nevada Court of
10 Appeals held that "while a plaintiff must name the State as a party to any state
11 tort claims in order to comply with NRS 41.031 and NRS 41.0337, this statutory
12 requirement does not apply to 42 U.S.C. § 1983 claims, even when brought in
13 the same complaint as a plaintiff's state tort claims. Indeed, the State cannot be
14 named as a party to a plaintiff's § 1983 civil rights claims." *Id.* at 414. In *Craig*,
15 the Nevada Court of Appeals addressed whether a plaintiff had to name the State
16 as a party in a state court case. *See id.* at 413. With respect to federal court cases,
17 in *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, (9th Cir. 2006),
18 the Ninth Circuit held that 28 U.S.C. § 1367 does not abrogate state sovereign
19 immunity for supplemental state law claims. *See id.* at 1133–34. If the Court
20 lacks jurisdiction over a necessary party to a pendant state tort claim, the Court
21 lacks supplemental jurisdiction over the claim. *Hirst v. Gertzen*, 676 F.2d 1252,
22 1264 (9th Cir. 1982). Since the State of Nevada *ex rel.* DPBH must be dismissed,
23 the state tort claims against all defendants must be dismissed for lack of subject
24 matter jurisdiction.[1] Ms. Swaim must raise her state tort claims in state court.

---

[1] Ms. Swaim "requests that the Court take judicial notice of the voluminous history of litigation, particularly in the context of § 1983 civil rights actions initiated by inmates incarcerated by the State and the Nevada Department of Corrections ("NDOC") in which the AG defends the NDOC[.]" (ECF No. 7 at 8.) However, the Court consistently holds that inmate actions in this Court against the NDOC directly are barred by the Eleventh Amendment and that state tort actions must be

*See Johnson v. Virus*, 2022 WL 6265989, at *6 (D. Nev. May 18, 2022).

### III.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

What remains in this case is Ms. Swaim's deliberate indifference to a serious medical need claim against the eighteen individual defendants. A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4)

---

brought in state court by virtue of the mandatory joinder statute. *See, e.g., Wilson v. Nevada Dep't of Corr.*, 2008 WL 5451001, at *1 (D. Nev. Dec. 31, 2008) (dismissing NDOC); *Lewis v. Dzurenda*, 2021 WL 8775770, at *9 (D. Nev. Feb. 1, 2021) (dismissing state tort claims). As in the instant case, what remain are typically § 1983 claims against individuals.

by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

The individual defendants argue that Ms. Swaim's complaint should be dismissed for failure to state a claim because Ms. Swaim's complaint does not describe what any of the individual defendants did wrong with specificity. The individual defendants state that "Plaintiffs' allegations are all against 'staff'" and that "Plaintiffs have merely recited the elements of various claims and inserted all the defendants into those elements[,]" noting that "[t]he only individual described as failing to conduct a check of the decedent is defendant Gomez[,]" and that "the only individuals who are even described are defendants, Gomez and Bostwick." (ECF No. 16 at 2–3.) However, Bostwick is described as a fellow Lake's Crossing resident, not an employee, who attempted to alert Gomez to a possible issue with Mr. Swaim and is not named as a defendant. (Complaint at ¶ 52.) The individual defendants also argue that Ms. Swaim's complaint contains no facts showing the personal participation of any individual defendant required for a § 1983 claim, nor facts showing that any individual defendant made an intentional decision required for a deliberate indifference claim, as well as that qualified immunity applies and that there is no private right of action for money damages under Article 1, § 8 of the Nevada Constitution.[2]

Ms. Swaim responds that the "allegations against each Defendant are clearly enumerated, even if and where the Defendants may be referred to collectively." (ECF No. 17 at 8.) Ms. Swaim points to language from the complaint stating that "each individually named Defendant, all of whom were Forensic Specialists on duty and on watch . . . made an intentional decision to not follow applicable and governing Lake's Crossing policy with respect to the consistent and timely (no less than every fifteen minutes) visual observation of Mr. Swaim,

---

[2] The individual defendants also argue that Ms. Swaim's negligent training, hiring, selection, and supervision claim is foreclosed as a matter of Nevada law. Since this claim is dismissed for lack of subject matter jurisdiction, the Court need not reach this argument.

to check to see if there was movement and to assure visual contact, recognition, and ascertainment of physical condition." (*Id.* at 9.) Ms. Swaim also alleges that the individual defendants failed to prevent Mr. Swaim from gaining access to an additional bedsheet, which contravened Lake's Crossing policy for residents on suicide watch. (Complaint at ¶ 45.) Ms. Swaim also proffers the February 10, 2021, Department of Public Safety Report for Investigation Division Case 19I0000764 ("Report") which was referenced in the complaint.[3] (*Id.* at ¶ 52; ECF No. 17-1.)

Ms. Swaim's complaint states claims against the individual defendants. Ms. Swaim alleges that each individual defendant knew of Mr. Swaim's suicide watch status and nonetheless failed to follow pertinent Lake's Crossing policies for residents on suicide watch, including the room check policy and the policy against residents on suicide watch having access to items in their rooms such as additional linens. (*E.g.*, Complaint at ¶ 59.) Construed in the light most favorable to Ms. Swaim, these allegations are sufficient to state a deliberate indifference claim because, taking the allegations as true, the individuals made an intentional decision to disregard these policies while knowing Mr. Swaim was on suicide watch, leading to Mr. Swaim's death by suicide. Furthermore, although defendant Gomez is the only individual defendant whose actions on the night of Mr. Swaim's death are described with specificity in the complaint, the Report recounts many other individual defendants passing by Mr. Swaim's room that night. (ECF No. 17-1.) The Report references each of the eighteen individual defendants in some capacity.

---

[3] A document may be incorporated by reference into a complaint under Fed. R. Civ. P. 10(c) if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim, even if the document is not attached to the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The individual defendants argue that the Report should not be considered as incorporated by reference to the complaint since it was not referred to extensively, but rather only in ¶ 52. However, ¶ 52 of the complaint is long and contains multiple sub-paragraphs. Furthermore, the report is integral to the claim and its authenticity is not contested. The Court will consider the Report as incorporated by reference for the purposes of the instant motion.

9

The fact that there are numerous individual defendants included in these allegations does not serve to relieve all the individual defendants from suit at this stage. It is possible that some or all of the individual defendants may be dismissed at the summary judgment stage if it is shown that any individuals did not personally participate in Mr. Swaim's care during the time period in question. At this stage, taking all the allegations in the complaint as true, Ms. Swaim presents a claim for relief that is plausible on its face.

Since Ms. Swaim states a claim for a constitutional violation, qualified immunity would be appropriate only if it was not clearly established that the conduct in question was a constitutional violation at the time of the conduct. Ms. Swaim argues that *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010), clearly established liability for deliberate indifference to a pretrial detainee's mental health needs that result in the detainee's suicide. As a threshold matter, there is no dispute that Plaintiff had a serious medical need or that there was a substantial risk of serious harm. The need to provide psychiatric care requires that prison officials monitor detainees whom they know are suicidal. *See Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1018 (9th Cir. 2010); *see also Clouthier*, 591 F.3d at 1241 (applying the deliberate indifference standard to the plaintiffs' claim that "correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention)."). A suicide risk rises to the level of "serious medical need" for the purpose of deliberate indifference where there is a "heightened suicide risk or an attempted suicide." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2009) (citation omitted), *judgment vacated on other grounds sub nom. City of Reno v. Conn*, 563 U.S. 915 (2011), *op'n reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011); *see also Simmons*, 609 F.3d at 1018 ("[A] heightened suicide risk can present a serious medical need.") (citation omitted).

The Court agrees that liability for this conduct was clearly established. The

individual defendants do not contest *Clouthier* and the cases cited therein but rather argue that liability cannot have been clearly established because the complaint does not describe the actions of the individual defendants with specificity. However, as described above, the Court finds that Ms. Swaim's complaint states a claim against the individual defendants. Qualified immunity is not appropriate at this stage.

Finally, the individual defendants argue that Ms. Swaim should not be permitted to seek damages under Article 1, § 8 of the Nevada Constitution, for deliberate indifference to a serious medical need since there is no private right of action under the Nevada Constitution against Nevada officials in their individual capacities. (ECF No. 16 at 6.) Ms. Swaim responded that this issue had been certified to the Supreme Court of Nevada by this Court in another case and was awaiting decision. (ECF No. 17 at 13–14.) Since that time, it appears that the Supreme Court of Nevada has issued a decision on the matter which reframed the certified questions and did not answer the question of whether Article 1, § 8 of the Nevada Constitution has an implied private right of action for damages. *Mack v. Williams,* 138 Nev. Adv. Op. 86 (2022). The Supreme Court of Nevada noted that there is not any Nevada precedent which establishes a private right of action for damages under Article 1, § 8 of the Nevada Constitution. *Id.* Accordingly, the Court will grant the individual defendants' motion to dismiss Ms. Swaim's claim for damages under the Nevada Constitution. Because it appears that any putative claim for damages for deliberate indifference to a serious medical need under Article 1, § 8 of the Nevada Constitution would be duplicative of the deliberate indifference claim under the Fourteenth Amendment, the Court declines to reach the question of whether there is a private right of action for damages under Article 1, § 8 of the Nevada Constitution.

### IV. CONCLUSION

It is therefore ordered that the State of Nevada *ex rel.* DPBH's motion to

dismiss (ECF No. 6) is granted.

It is further ordered that the State of Nevada *ex rel.* DPBH be dismissed from this case for lack of subject matter jurisdiction.

It is further ordered that Ms. Swaim's second, third, and fourth claims for relief be dismissed for lack of subject matter jurisdiction.

It is further ordered that the individual defendants' motion to dismiss (ECF No. 16) is granted with respect to Ms. Swaim's claim for damages under Article 1, § 8 of the Nevada Constitution and denied in all other aspects.

DATED THIS 3rd day of February 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE